[No. 11290.   Department One. — June 4, 1888.]

# SANTA CLARA VALLEY MILL AND LUMBER COMPANY, APPELLANT, v. ISAAC N. HAYES ET AL., RESPONDENTS.

CONTRACT IN RESTRAINT OF TRADE — COMBINATION AMONG LUMBER MANU-FACTURERS — ILLEGAL CONTRACT. — The plaintiff and the defendants, who were each manufacturers of lumber, entered into a contract, by the terms of which the defendants agreed to make and deliver to the plaintiff during the year 1881 two million feet of lumber at eleven dollars per thousand feet, and further agreed not to manufacture any lumber during such period for sale within a specified territory, except under the contract, and to pay the plaintiff twenty dollars per thousand feet for any lumber manufactured and sold to parties other than the plaintiff. Similar contracts were made by the plaintiff with other lumber dealers, and its sole object and consideration in entering into such contracts was to form a combination for the purpose of increasing the price of lumber, limiting the supply, and giving it the control of the lumber market within the territory specified. Held, that the contract was in restraint of trade, and being indivisible, was invalid in its entirety.

APPEAL from a judgment of the Superior Court of Santa Cruz County.

The facts are stated in the opinion of the court.

Charles F. Wilcox, Thomas H. Laine, and Charles B. Younger, for Appellant.

The contract is not in restraint of trade, and is not contrary to public policy. (Civ. Code, sec. 1667; Perkins v. Lynan, 9 Mass. 522; Addison on Contracts, secs. 27 292; Lightner v. Menzer, 35 Cal. 452; Oliver v. P

How. 333; *Schwalm* v. *Holmes*, 49 Cal. 665; *Van Marter* v. *Babcock*, 23 Barb. 633; *Kellogg* v. *Larkin*, 3 Pinn. 164; 56 Am. Dec. 164; *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473.) The contract is divisible, and the first part can stand although the latter be illegal. (Civ. Code, sec. 1599; *Jackson* v. *Shawl*, 29 Cal. 267; *Treadwell* v. *Davis*, 34 Cal. 601; 94 Am. Dec. 770; *Granger* v. *Empire Co.*, 59 Cal. 678; *Oregon Steam Nav. Co.* v. *Windsor*, 20 Wall. 64.)

*A. E. Bolton*, and *J. A. Barham*, for Respondents.

The contract is void because against public policy. (*Spence* v. *Harvey*, 22 Cal. 337; 83 Am. Dec. 69; Pomeroy on Contracts, sec. 283; Chitty on Contracts, sec. 987; Story on Contracts, sec. 684; *India Bagging Co.* v. *B. Rock Co.*, 14 La. Ann. 168; *Salt Co.* v. *Guthrie*, 35 Ohio St. 672; *Craft* v. *McConough*, 79 Ill. 349; 12 Am. Rep. 171; *Morris's Run Coal Co.* v. *Barclay Coal Co.*, 68 Pa. St. 182; *Arnot* v. *Pittston etc. Co.*, 68 N. Y. 559; 23 Am. Rep. 190; *Clarency* v. *Onondaga Fine Salt Co.*, 62 Barb. 395; *Denver & N. O. R. Co.* v. *Atchison, T., & S. F. R. R. Co.*, 15 Fed. Rep. 650; Greenhood on Public Policy, 671, and cases cited.) The contract is not divisible. (*Valentine* v. *Stewart*, 15 Cal. 404; *Prost* v. *More*, 40 Cal. 348; *More* v. *Bonnet*, 40 Cal. 251; *Forbes* v. *McDonald*, 54 Cal. 98; *Norris* v. *Harris*, 15 Cal. 256; *Spence* v. *Harvey*, 22 Cal. 337; 83 Am. Dec. 69; *Beard* v. *Beard*, 65 Cal. 354; Chitty on Contracts, sec. 594; *Woodruff* v. *Hinman*, 11 Vt. 592; 34 Am. Dec. 712; *Saratoga Co. Bank* v. *King*, 44 N. Y. 87; *Pueblo & Ark. V. R. R.* v. *Taylor*, 6 Col. 1; 45 Am. Rep. 512; Parsons on Contracts, 7th ed., 648, and notes.)

SEARLS, C. J.—This is an action to recover ten thousand dollars for a breach of a contract entered into between plaintiff, a corporation, and defendants, who were engaged in the manufacture of lumber near Felton in ~~~ county of Santa Cruz, whereby the latter agreed to ~~~ and deliver to the former during the lumber year

of 1881 two million feet of lumber at eleven dollars per thousand feet. Defendants agreed not to manufacture any lumber to be sold during said period, in the counties of Monterey, San Benito, Santa Cruz, or Santa Clara, except under the contract, and to pay plaintiff twenty dollars per thousand feet for any lumber manufactured and sold to parties other than plaintiffs. Defendants failed to comply with the contract; hence this action.

The court finds that plaintiff was the owner of three saw-mills near Felton, and that various other parties were likewise owners of similar mills in the same vicinity.

That for the purpose of limiting the supply of lumber and increasing the price thereof, a plan was devised by which plaintiff was to lease all the mills for the year 1881, where such leases could be obtained, and where that could not be done, to contract with the parties owning mills and not willing to lease, by contracts similar to the one entered into with defendants; that during the year 1881 plaintiff should shut down two of its own mills, and also as many of the mills by it leased as might seem necessary in order to limit the supply of lumber in the four counties hereinbefore named; that this contemplated scheme was carried out, including the contract with defendants as a part thereof.

That the sole and only object, purpose, and consideration upon the part of plaintiff in entering into these contracts was to form a combination among all the manufacturers of lumber at or near Felton, for the sole purpose of increasing the price of lumber, limiting the amount to be manufactured, and giving plaintiff the control of all lumber manufactured near Felton for the year 1881, and control of the supply of lumber for that year in the counties mentioned.

That the direct effect of this was, no wholesale market for lumber at Felton, and dealers could not purchase in any considerable quantity during 1881.

The court further found that the contract was against public policy, and that plaintiff was not damaged, etc.

Was the contract with defendant in contravention of public policy?

The general rule is, that an illegal contract is absolutely void, and cannot form the basis of judicial proceedings.

This is equally so in law and equity. The illegality vitiates the contract between the immediate parties, as well as in respect to third parties.

A contract tainted with the vice of illegality creates no obligation, not because of the rights of the parties to it, but because the public is interested.

In case of fraud or mistake, the wrong is usually personal to the injured party, and may be waived.

In cases of illegality, the wrong is far-reaching,—is done to society.

This illegality may be in the consideration or in the promises and stipulations of the agreement.

Among the contracts illegal under the common law, because opposed to public policy, were contracts in general restraint of trade; contracts between individuals, to prevent competition and keep up the price of articles of utility. (Pomeroy on Contracts, sec. 283; *Jones* v. *Caswell*, 3 Johns. Cas. 29; *Doolin* v. *Ward*, 6 Johns. 194; *Wilbur* v. *How*, 8 Johns. 444.)

The case of *Arnot* v. *Pittston and Elmira Coal Company*, 68 N. Y. 559, is in most respects similar to the case at bar.

Arnot, the plaintiff, brought the suit as the assignee of the Butler Colliery Company, which company and defendants were corporations engaged in the business of mining and vending coal at or near Pittston, Pennsylvania. Defendant also had a depot for coal at Elmira, New York, and was there engaged in vending coal, the product of the Pittston mines, to a large extent of country north and west of Elmira.

Defendant entered into a contract with the Butler Colliery Company, by which said defendant agreed to take all the coal the Butler company desired to send north of the state line, not exceeding two thousand tons per month, and the Butler Colliery Coal Company on its part agreed not to sell coal to any other party except defendant, to go north of the state line (between New York and Pennsylvania) during the continuance of the agreement.

The Butler company sold coal during the term covered by the agreement to parties other than the defendant, and having delivered to defendant under the agreement coal which the latter refused to pay for, the action was brought to recover for the coal so delivered under the agreement.

It appeared that defendant had made similar contracts with all the other mining proprietors of Pittston, and that the object was to so control the shipment and supply of coal for the Elmira market as to maintain an unnaturally high price for coal in that market, and to prevent competition in the sale of coal therein.

The court in considering the appeal said:—

"That a combination to effect such a purpose is inimical to the interest of the public, and that all contracts designed to effect such an end are contrary to public policy, and therefore illegal, is too well settled by adjudicated cases to be a question of this day. (Cites *Morris Run C. Co.* v. *Barclay C. Co.*, 68 Pa. St. 173; *People* v. *Fisher*, 14 Wend. 9; *Stanton* v. *Allen*, 5 Denio, 434; *Saratoga Co. Bank* v. *King*, 44 N. Y. 87.)

"Every producer or vender of coal, or other commodity, has the right to use all legitimate efforts to obtain the best price for the article in which he deals; but when he endeavors to artificially enhance prices by suppressing or keeping out of market the produce of others, and to accomplish that purpose by means of contracts binding them to withhold their supply, such restraints

are even more mischievous than combinations not to sell under an agreed price. Combinations of that character have been held to be against public policy, and illegal. . . . .

"Parties entering into contracts of this description must depend upon each other for their execution, and cannot derive any assistance from the courts, and the contract was held void." *Salt Co.* v. *Gutteril*, 35 Ohio St. 672, *Craft* v. *McConoughy*, 79 Ill. 349, and *Morris R. C. Co.* v. *Beaslay C. Co.*, 68 Pa. St. 182, are to the same general effect.

In the case at bar the facts are, as we think, even stronger against the plaintiff than in *Arnot* v. *Pittston and Elmira Coal Company.*

Here, it entered into a contract with the object and view to suppress the supply and enhance the price of lumber in four counties of the state. The contract was void as being against public policy, and the defendants, as they had a right to do, repudiated the contract. Plaintiff, who has parted with nothing of value, now seeks to recover damages for non-delivery of lumber under this contract.

Plaintiff had an undoubted right to purchase any or all of the lumber it chose, and to sell at such prices and places as it saw fit, but when as a condition of purchase it bound its vendor not to sell to others under a penalty, it transcended a rule the adoption of which has been dictated by the experience and wisdom of ages as essential to the best interests of the community, and as necessary to the protection alike of individuals and legitimate trade.

With the results naturally flowing from the laws of demand and supply, the courts have nothing to do, but when agreements are resorted to for the purpose of taking trade out of the realm of competition, and thereby enhancing or depressing prices of commodities, the

courts cannot be successfully invoked, and their execution will be left to the volition of the parties thereto.

2. It is claimed by appellant that the contract is divisible, and the first part can stand though the latter be illegal.

If the whole vice of the contract was embodied in the promise of the defendants not to sell lumber to other persons, the illegality would lie in the promise alone, and it might be contended with great force that this promise was divisible from the agreement to sell. Under the findings of the court, however, the illegality inheres in the consideration.

The very essence and mainspring of the agreement—the illegal object—"was to form a combination among all the manufacturers of lumber at or near Felton for the sole purpose of increasing the price of lumber, limiting the amount thereof to be manufactured, and give plaintiff control of all lumber manufactured," etc.

This being the inducement to the agreement, and the *sole object* in view, it cannot be separated and leave any subject-matter capable of enforcement, as was done in *Granger* v. *Empire Co.*, 59 Cal. 678; *Treadwell* v. *Davis*, 34 Cal. 601; and *Jackson* v. *Shawl*, 29 Cal. 267.

The case falls within the rule of *Valentine* v. *Stewart*, 15 Cal. 404; *Prost* v. *More*, 40 Cal. 348; *More* v. *Bonnet*, 40 Cal. 251; *Forbes* v. *McDonald*, 54 Cal. 96; *Arnot* v. *Pittston and Elmira Coal Co.*, *supra*.

The good cannot be separated from the bad, or rather the bad enters into and permeates the whole contract, so that none of it can be said to be good, and therefore the subject of an action.

We fail to see any inconsistency between the eighteenth finding and the first or sixth.

The first finding declares that plaintiff and defendants entered into the contract set out in the amended complaint.

The sixth finding is to the effect that the contract has not been rescinded, abrogated, or modified.

The eighteenth finding is as to the real object and purpose of the contract.

The judgment of the court below is affirmed.

McKINSTRY, J., and PATERSON, J., concurred.