# PACIFIC FACTOR COMPANY, Appellant, v. A. A. ADLER, Respondent.

CONTRACTS — EXCLUSIVE AGENCY TO SELL — RESTRAINT OF SALE — MONOPOLY — PUBLIC POLICY. — A contract, by the terms of which the defendant agreed to give to the plaintiff the exclusive sale of grain-bags or burlaps, up to a specified quantity, to be under the defendant's control for a specified period, and agreed to accept for them the average price received by the plaintiff for all grain-bags or burlaps sold by him, and the plaintiff agreed to sell them for a specified commission, and to be bound to sell a specified quantity of them, is not upon its face void as being in restraint of trade, or against public policy; but if it be shown that such contract formed part of a scheme of the plaintiff to establish a monopoly in grain-bags or burlaps, to the prejudice of the people of the state, the contract is void, as opposed to public policy.

ID. — ACTION FOR BREACH — DEFENSE — MONOPOLY — MOTION TO STRIKE OUT ANSWER — JUDGMENT UPON PLEADINGS — SPECIAL DEMURRER. — In an action for the breach of such contract, where the defendant evidently intends to claim as a defense that the contract in suit formed part of a scheme or plan of the plaintiff to establish a monopoly. and prevent competition in the sale of grain-bags throughout the state, the defense is sufficient to prevent a motion to strike out the answer from prevailing, and to preclude a judgment for the plaintiff upon the pleadings, though the answer may be defectively stated, and be liable to a special demurrer for failing to state with certainty that the contract relied upon by the plaintiff was entered into as part and in pursuance of such scheme.

ID. — LIQUIDATED DAMAGE — FAILURE TO DELIVER GRAIN-BAGS. — A clause in the contract to the effect that the defendant would pay to the plaintiff three cents for each bag which he refused or neglected to deliver on demand, as liquidated damages, is void under sections 1670 and 1671 of the Civil Code; and the fact that it was understood and agreed between the plaintiff and the defendant, at the time of making the contract, that, owing to the nature of the case, it would be impracticable and extremely difficult to fix the actual damage does not avoid the statute, nor preclude the court from determining whether or not it would be impracticable or extremely difficult to fix the actual damage.

ID. — QUESTION OF FACT. — Whether a contract is such that "from the nature of the case" it would be impracticable or extremely difficult to fix the actual damage is a question of fact to be determined in each particular case by the court, and not by the arbitrary agreement of the parties.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

*H. K. Mitchell*, for Appellant.

The court erred in refusing to strike out the affirmative matter alleged in the answer. (Code Civ. Proc., sec. 453; *Case* v. *Maxey*, 6 Cal. 276; *Weimer* v. *Lowery*, 11 Cal. 104; *Felch* v. *Beaudry*, 40 Cal. 439; *Frost* v. *Harjord*, 40 Cal. 166.) The court erred in denying the motion for judgment upon the complaint and answer, as the admission in the answer of the making of the contract, and the contract itself, and the express admission that the defendant did agree to pay the three cents, shows the denial to be sham and false. (3 Estee's Pleading and Practice, 2d ed., 177; *Gay* v. *Winter*, 34 Cal. 153; *Piercy* v. *Sabin*, 10 Cal. 22; 70 Am. Dec. 692; *Gostorfs* v. *Taaf*, 18 Cal. 385.) No contracts are void as being in general restraint of trade when made simply to prevent a party from engaging or competing in the same business. (*Leslie* v. *Lorillard*, 110 N. Y. 519; *Diamond Watch Co.* v. *Roeber*, 106 N. Y. 473; 60 Am. Rep. 464; *Dolph* v. *Troy Laundry Machinery Co.*, 28 Fed. Rep. 553; *Central Shade Roller Co.* v. *Cushman*, 143 Mass. 353. See also *Oregon Steam Navigation Co.* v. *Winsor*, 20 Wall. 64; *Bishop* v. *Palmer*, 146 Mass. 469; 4 Am. St. Rep. 339; *Arnold* v. *Kreutzer*, 67 Iowa, 214; *Finger* v. *Hahn*, 42 N. J. Eq. 606; *Smith's Appeal*, 113 Pa. St. 579.) An agreement to sell the entire product of the business to one party, who agrees to pay it, cannot possibly be a restraint. (*Schwalm* v. *Holmes*, 49 Cal. 665.) The clause in the contract relating to liquidated damages is not void. (Civ. Code, sec. 1671; 2 Sedgwick on Damages, 7th ed., 217, 245–248; 2 Greenl. Ev., secs. 257–259; 1 Sutherland on Damages, 503, 504, 507.) Where from the nature of the case and the tenor of the agreement it is apparent that the damages have already been the subject of actual and fair calculation and adjustment between the parties, stipulated damages are upheld. (2 Greenl. Ev., 13th ed., sec. 259; 2 Story's Eq. Jur., sec. 1318. *Leland* v. *Stone*, 10 Mass. 459–462.) Where it is difficult or impracticable

to estimate damages, the sum specified is liquidated damages. (*Cal. Steam Nav. Co.* v. *Wright*, 6 Cal. 258; 65 Am. Dec. 511; *Fisk* v. *Fowler*, 10 Cal. 513; *People* v. *Love*, 19 Cal. 677; *Streeter* v. *Rush*, 25 Cal. 68; *Cummings* v. *Dudley*, 60 Cal. 384; 44 Am. Rep. 58; *Muldoon* v. *Lynch*, 66 Cal. 540; *Pierce* v. *Jung*, 10 Wis. 30; *Williams* v. *Dakin*, 22 Wend. 201; *Lange* v. *Work*, 2 Ohio St. 519; *Holmes* v. *Holmes*, 12 Barb. 137.) Where the contract does not afford any *data* from which the actual damage can be calculated, this circumstance has been held a sufficient reason for regarding a stipulated sum as liquidated damages. (1 Sutherland on Damages, 504; *Fletcher* v. *Dyche*, 2 Term Rep. 34.) All contracts which require any extrinsic evidence to ascertain the actual damage or injury are deemed uncertain. (1 Sutherland on Damages, 505.) The damages for the breach of contracts for the withdrawal of competition are so obviously uncertain that courts have recognized the fullest liberty of parties to fix beforehand the amount of damages in that class of cases. (1 Sutherland on Damages, 507; *Pierce* v. *Fuller*, 8 Mass. 223; 5 Am. Dec. 102; *Dakin* v. *Williams*, 17 Wend. 454; *Streeter* v. *Rush*, 25 Cal. 68.) In actions upon contract, it is a rule that only such damages are recoverable as are the natural and proximate consequence of the breach. They include direct damages, and such as the parties contemplated would be likely to restrict them from a breach when the contract was made. (1 Sutherland on Damages, 74; *Rhodes* v. *Baird*, 16 Ohio St. 581; *Brayton* v. *Chase*, 3 Wis. 406; *Brides* v. *Shucking*, 38 Me. 361; *Candee* v. *Western Union Tel. Co.*, 34 Wis. 479; 17 Am. Rep. 452.) The contract is not one of purchase and sale, but it is a contract between defendant as principal and plaintiff as a factor or commission merchant. (Civ. Code, secs. 2026–2030; *Wisp* v. *Hazard*, 66 Cal. 459; *Burton* v. *Goodspeed*, 69 Ill. 237; *Denney* v. *Wheelwright*, 60 Miss. 733.)

*Naphtaly, Freidenrich & Ackerman,* for Respondent.

The measure of damages for the breach of the respondent's agreement is the excess, if any, of the value of the property to the buyer over the amount which would have been due under the contract. (Civ. Code, sec. 3308.) To sustain the clause for liquidated damages, it must appear from the nature of the case that it would be impracticable or extremely difficult to fix the actual damage. (Civ. Code, sec. 1671; *Muldoon* v. *Lynch,* 66 Cal. 536; *Patent Brick Co.* v. *Moore,* 75 Cal. 205; 1 Sutherland on Damages, 480, and note; 2 Sedgwick on Damages, 247; Sedgwick's Leading Cases on Damages, 432.) The contract is void, as in restraint of trade. (Civ. Code, sec. 1673.) The contract is void, as against public policy, as well as in restraint of trade. (*Santa Clara M. & L. Co.* v. *Hayes,* 76 Cal. 387; 9 Am. St. Rep. 211.) Contracts between individuals to prevent competition, and keep up the price of articles of utility, are illegal at common law, because opposed to public policy. (Pomeroy on Contracts, sec. 283; *Jones* v. *Caswell,* 3 Johns. Cas. 29; 2 Am. Dec. 134; *Doolin* v. *Ward,* 6 Johns. 194; *Wilbur* v. *How,* 8 Johns. 444; *Arnott* v. *P. & E. Coal Co.,* 68 N. Y. 559; 23 Am. Rep. 190; *Morris Run C. Co.* v. *B. C. Co.,* 68 Pa. St. 173; 8 Am. Rep. 159; *People* v. *Fisher,* 14 Wend. 9; 28 Am. Dec. 501; *Stanton* v. *Allen,* 5 Denio, 434; 49 Am. Dec. 282; *Saratoga Co. Bank* v. *King,* 44 N. Y. 87; *Salt Co.* v. *Guthrie,* 35 Ohio St. 672; *Craft* v. *McConoughy,* 79 Ill. 349; 12 Am. Rep. 171.)

GAROUTTE, J. — This is an action upon a contract to recover liquidated damages.

The portions of plaintiff's complaint necessary to consider in the decision of this cause are: —

"That plaintiff is a corporation, incorporated in this state for the purpose of conducting and carrying on the business of buying, selling, and otherwise dealing in

goods, wares, and merchandise, either in its own behalf or as agent for others on commission; that on the sixteenth day of May, 1888, in consideration of one dollar, defendant entered into an agreement, in writing, with plaintiff, whereby he agreed to give it (plaintiff) the exclusive sale of all grain-bags or burlaps, amounting to 187,500 bags, which were or would be under his control prior to January 1, 1889.

" And defendant further agreed to accept for said bags or burlaps the average price the plaintiff might obtain for all grain-bags or burlaps it might sell between the date of said contract and January 1, 1889.

" And in case plaintiff should fail to sell said 187,500 bags, defendant agreed to accept the sale of a *pro rata* amount of grain-bags or burlaps as 187,500 is to the entire number of grain-bags and burlaps which plaintiff should sell from this date until the first day of January, 1889.

" And defendant agreed to deliver to said company, or at their order, whatever number of grain-bags or burlaps, up to 187,500, the said company should call on him to deliver between this date and the first day of January, 1889, on payment to him, when such bags were delivered (less one per cent commission), of seven and one half cents for each bag or burlap delivered.

" And in case defendant should receive more money or deliver more bags or burlaps than his *pro rata* of the whole number sold by plaintiff between this date and the first day of January, 1889, the defendant would refund the excess of money received, and accept other bags in lieu thereof.

" And defendant agreed not to sell or offer for sale said 187,500 bags or burlaps to any one other than to the plaintiff or upon its order.

" And defendant further agreed to pay plaintiff one per cent on all sales of said bags, or any part thereof.

" And defendant further agreed to pay plaintiff three

cents for each bag or burlap which he refused or ne-
glected to deliver on demand, as liquidated damages.

"And the said plaintiff agreed to sell and draw on
defendant, from time to time, as sales were made, as near
in its judgment as it could determine, a *pro rata* amount
of said 187,500 bags or burlaps, as 187,500 is to the en-
tire number of bags that are placed in its hands for sale
between this date and January 1, 1889."

The complaint further alleges that plaintiff, in pursu-
ance of the covenants in said agreement, demanded of
said defendant, prior to January 1, 1889, said 187,500
bags, and defendant, at that time, had said bags in his
possession, but neglected and refused to deliver them to
plaintiff.

The answer of defendant practically admits the alle-
gations of the complaint, and sets out certain matters in
avoidance, as a special defense, to the effect " that plain-
tiff, through its board of directors, about the sixteenth
day of May, 1888, devised a scheme to control the sale
and supply of all or the greater portion of the grain-bags
and burlaps which were then within the state of Cali-
fornia, or to arrive prior to January 1, 1889, for the
purpose of increasing the price of bags and burlaps, and
of limiting the number of dealers from whom such bags
could be obtained, and compelling the farmers of this
state to purchase said bags from plaintiff, at a price in
excess of their real value; that the demand in this state
for such bags and burlaps, for the purpose of sacking the
grain, amounts annually to between thirty-two million
and thirty-five million bags; that plaintiff calculated that
the quantity of grain-bags and burlaps which were then
within this state, and which were to arrive prior to Jan-
uary 1, 1889, amounted to forty-two million bags, and
that if plaintiff could make contracts with the holders
and owners of said bags, whereby it could secure the
exclusive right of making sales thereof, that thereby
competition for the sale of said bags among said owners

and dealers would be removed, and the plaintiff would be enabled to fix a larger price therefor, and compel the parties who required said bags to remove the grain raised on the Pacific coast to purchase the same from plaintiff, and pay therefor the price which plaintiff might demand; that in pursuance of said scheme, plaintiff entered into contracts with other holders and owners of grain-bags and burlaps, in all respects similar to the contract made with defendant; that the entire quantity of said grain-bags and burlaps covered by all the contracts of plaintiff aggregated thirty million bags, or thereabouts; that all of said contracts, including the contract with defendant, are contrary to public policy, and void."

The foregoing matters, in addition to others not necessary to note at this time, are set out in detail by defendant. At the trial plaintiff introduced the contract in evidence, and rested.

Defendant made a motion for a nonsuit, which motion was granted. This is an appeal from that judgment.

Appellant insists that his motion to strike out the affirmative matter in the answer should have been granted, and also that the court erred in not granting his motion for judgment upon the pleadings.

The affirmative defense of the answer is defectively pleaded, and should not have been allowed to stand if attacked by demurrer. It fails to allege that the contract under consideration in this cause was entered into as a part of and in pursuance of the scheme or plan set out, and if the contract relied upon by plaintiff to recover formed no part of the general "plan" to make a "corner" of the bag and burlap market of the state, then such plan was outside of the questions involved in this litigation, constituted no defense to this suit, and should have been stricken out as surplusage.

But it is quite apparent from the pleading, taken as a

whole, that the defendant intended, by this defense, to claim that the contract embraced in the complaint formed part of this " scheme or plan," and was therefore void, as being against public policy.

A defective pleading cannot be stricken out by reason of its defects upon the ground of surplusage. In this case a demurrer would have been the proper means to have tested the sufficiency of the answer, and the motion to strike out was properly denied.

Without passing upon the question as to whether any of the allegations of the complaint were denied by the answer, we think the affirmative defense relied upon by defendant was sufficient to defeat the motion of plaintiff for judgment upon the pleadings, when considered in the light of the construction just placed upon it.

While it is clear that public policy favors the utmost freedom of contracts within the limits of the law, and requires that business transactions should not be fettered by unnecessary restrictions, yet agreements in restraint of competition, that threaten the public good, entered into with the object and view of controlling, and if necessary suppressing, the supply, and thereby enhancing the price of articles of actual necessity, that embrace in their evil effects all the territory and practically all the people of this great state, become a grave menace to the best interests of the commonwealth, and therefore are opposed to sound public policy. The entire number of bags in the state on the sixteenth day of May, 1888, and which would arrive prior to January 1, 1889, amounted to forty-two millions. The annual demand for bags was thirty-two millions. The plaintiff entered into this "scheme" or "plan" to obtain the control of these forty-two million bags, and in pursuance of said plan by contract did actually secure the control of thirty millions of these bags from the owners and holders thereof.

The plaintiff did not purchase the bags; at the same time, by the rigor of its contract, it prevented the owners from selling them.

It is clear this "scheme" or "plan" was devised, and these contracts entered into, for the purpose of removing all competition, and thereby compelling the farmers to purchase bags from plaintiff, at a price in excess of their real value.

Plaintiff controlled three fourths of all the bags which were in the state, or which would arrive within the ensuing six months. It held the bag market in its hands, for competition was gone, and the price demanded must be paid. These agreements were not entered into for the purpose of aggregating capital, nor for greater facilities in the conducting of their business, nor for the protection of themselves by a reasonable restraint upon active competitors, but for the purpose of regulating, controlling, and withholding the supply of bags, and thereby to take an unjust advantage of the farmers' necessities, by disposing of the fruits of its unlawful labors at an unreasonable advance in price.

The supreme court of the state of Ohio, in speaking upon this question, said: "The clear tendency of such an agreement is to establish a monopoly and to destroy competition in trade, and for that reason, on grounds of public policy, courts will not aid in its enforcement. It is no answer to say that competition in the salt trade was not in fact destroyed, or that the price of the commodity was not unreasonably advanced. Courts will not stop to inquire as to the degree of injury inflicted upon the public; it is enough to know that the inevitable tendency of such contracts is injurious to the public." (*Salt Company* v. *Guthrie,* 35 Ohio St. 672.)

In considering the question as to what is a reasonable restraint of trade, Chief Justice Tyndall, in *Morris Run Coal Co.* v. *Barclay Coal Co.,* 68 Pa. St. 173, 8 Am. Rep. 159, used the following language: "We do not see how

a better test can be applied to the question than by considering whether the restraint is such only as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interests of the public; whatever is injurious to the interests of the public is void, on the ground of public policy." (*Craft* v. *McConoughy*, 79 Ill. 346; 12 Am. Rep. 171; *Arnott* v. *Pittston and Elmira Coal Co.*, 68 N. Y. 558; 23 Am. Rep. 190.)

It is difficult to distinguish upon principle the case of *Santa Clara V. M. & L. Co.* v. *Hayes*, 76 Cal. 387, 9 Am. St. Rep. 211, from the case at bar.

Plaintiff, being a manufacturer of lumber, entered into contracts with various manufacturers of lumber to purchase so many thousand feet from each during the year 1881, and said parties agreed not to manufacture during said time any other lumber to be sold in the four counties where plaintiff was doing business. The sole object and consideration in entering into these contracts was for the purpose of increasing the price of lumber, limiting the supply and giving the plaintiff control of the lumber market within the territory specified.

Chief Justice Searls, in holding one of the contracts void, said: " With the results naturally flowing from the laws of demand and supply, the courts have nothing to do, but when agreements are resorted to for the purpose of taking trade out of the realm of competition, and thereby enhancing or depressing prices of commodities, the courts cannot be successfully invoked, and their execution will be left to the volition of the parties thereto."

After plaintiff had introduced the contract in evidence, and rested, defendant was granted a nonsuit upon two grounds: 1. That no proof of actual damage was offered, and the clause of the contract fixing liquidated damages is void under sections 1670 and 1671 of the Civil Code; 2. That the contract is void, as being in restraint of trade and against public policy.

Section 1670 of the Civil Code provides: "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

"Sec. 1671. The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when from the nature of the case it would be impracticable or extremely difficult to fix the actual damage."

The allegation of the complaint, that "it was understood and agreed between plaintiff and defendant, at the time of making the contract, that, owing to the nature of the case, it would be impracticable and extremely difficult to fix the actual damage," added no merit to the pleading, and its denial in the answer was unnecessary labor.

Whether a contract is such that "from the nature of the case" it would be impracticable or extremely difficult to fix the actual damage sustained by a breach thereof is a question of fact, which must be determined in each particular case; and for the purpose of determining this question the court must examine the attendant and surrounding circumstances under which the contract was entered into, as well as the terms of the contract itself.    Parties cannot, by their arbitrary agreement, preclude such examination by the court, or avoid the provisions of the statute. (*Patent Brick Co.* v. *Moore*, 75 Cal. 205; *Eva* v. *McMahon*, 77 Cal. 472.)

In the present case we think that when the plaintiff rested, the "nature of the case," as presented by the terms of the contract, and its breach as admitted by the answer, was such that the court could decide as a fact that it was neither extremely difficult nor impracticable to fix the actual damage sustained by the plaintiff by reason of the defendant's breach of the contract. The refusal

of the defendant to deliver the bags may have deprived the plaintiff of its commissions for selling, and under certain circumstances it may have suffered other damage, but we can imagine no case where any damage could have resulted to the plaintiff by reason of a breach of this contract, and which the plaintiff would have been entitled to recover in a court of law, where it could be said that it was impracticable or extremely difficult to fix the actual damage.

Is the contract void, as being in restraint of trade and against public policy? This question, when the motion for a nonsuit was made, was to be determined by an examination of the terms of the contract itself.

We have already decided that it was so corrupted by the bad company with which it associated, as set forth in the answer of defendant, as to be beyond the pale of the law at that time; but at an earlier age, when it appears in the complaint, no stain or blemish is found to discolor it.

The plaintiff contracted to sell the bags and burlaps of defendant at a certain commission. Defendant agreed to accept for them the average price it received for all bags it sold; plaintiff had the exclusive sale of the bags, and was bound to sell a certain portion of them.

Standing alone, a total stranger to the " scheme " or " plan " set out in the answer, this contract must be considered good; for no illegal object appears; no transgression of the law is apparent; no public interest is injuriously affected.

It follows, from the foregoing views, that the judgment should be affirmed.

It is so ordered.

BEATTY, C. J., and HARRISON, J., concurred.