## BENICIA AGRICULTURAL WORKS v. ESTES et al.

### No. 18,006; April 17, 1893.

#### 32 Pac. 938.

**Mortgage Foreclosure—Defense of Unlawful Consideration.—** On a mortgage foreclosure the evidence showed that, at the time the note and mortgage were given, there was pending, in insolvency proceedings against defendants' father, the latter's petition for discharge and plaintiff's opposition thereto; that the consideration of the note, though not expressed therein, was an assignment to defendants by plaintiff of his claim against the insolvent, which was of the same amount as the note, and that the estimated value of the claim was one-sixth of its face; that by agreement plaintiff's claim against the insolvent assigned to defendant was to be held by plaintiff's attorney, and, when paid, to be applied on the note; that, after the giving of the note and mortgage, plaintiff's opposition to the discharge of the insolvent was withdrawn. Held, that the mortgage and note were void as against public policy.

**Mortgage Foreclosure—Evidence of Unlawful Consideration.—** The fact that a mortgage was given as security for the performance of an unlawful contract may be shown by oral testimony in an action for foreclosure, though no infirmity appears on the face of the mortgage.[1]

APPEAL from Superior Court, Fresno County; M. K. Harris, Judge.

Action by the Benicia Agricultural Works, a corporation, against Lyman W. Estes and M. Estes, for the foreclosure

---

[1] Approved in Daw v. Niles, 104 Cal. 118, 37 Pac. 881, where oral evidence was admitted to prove a promise by a mortgagor, made contemporaneously with the mortgage, to pay the mortgage tax.

of a mortgage. Plaintiff had judgment, from which, and an order denying a new trial, defendants appeal. Reversed.

R. P. Davidson for appellants; R. B. Terry and G. B. Graham for respondent.

VANCLIEF, C.—Action to foreclose a mortgage executed by Lyman W. Estes to the plaintiff, to secure a joint and several promissory note for $1,200 made by both defendants. The only defense to the action is that the consideration for the note and mortgage was unlawful, as being contrary to the policy of express law. Judgment was rendered in favor of the plaintiff, and defendants appeal from the judgment, and from an order denying their motion for a new trial.

The facts of the alleged defense are substantially as follows: That, at the time of the execution of the note and mortgage, there was pending in the superior court a proceeding, under the insolvent act of 1880, against one Albert Estes, the father of the defendants, instituted by his creditors, in which he had been adjudged an involuntary insolvent, and had filed his petition for a final discharge from all his debts and liabilities; that the plaintiff, as one of the creditors of the insolvent whose claim had been proved, opposed the final discharge of the insolvent, and had filed in the court in which the proceeding was pending written specifications of the grounds of its opposition; that said petition of the insolvent for discharge, and the opposition thereto by the plaintiff, were pending and undecided at the time of the making and execution of the note and mortgage; and that the only consideration for the making of said note, and the execution of said mortgage, was the withdrawal by plaintiff of its opposition to the final discharge of the insolvent. The cause was tried by the court, and the only findings upon the issues tendered by the answer are, in substance, that the plaintiff did not promise the defendants that, if they would make and execute the note and mortgage, the plaintiff would withdraw all opposition to the discharge of said insolvent; and that defendants did not make and execute the note and mortgage in consideration of any agreement or promise of the plaintiff to withdraw its opposition to the discharge of said insolvent. The appellants contend that these findings are not justified by the evidence; and this is the only

ground upon which a reversal of the judgment and order is asked.

On the trial, the allegations of the answer in respect to the pending of the insolvency proceedings against Albert Estes, and the opposition to the discharge of the insolvent, were admitted by the plaintiff. The only oral testimony at the trial was that of the defendants on their own behalf, and that of G. B. Graham, Esq., who had been the attorney for the plaintiff in the matter of its opposition to the discharge of the insolvent, on behalf of the plaintiff. Besides this, there was some documentary evidence, which will be noticed hereafter. It appears without dispute that the trial of the matter of the opposition to the discharge of the insolvent had been set for trial on the twenty-second day of March, 1890, and that one of the defendants had been subpoenaed as a witness on that trial; that during the morning of that day, before the hour appointed for the trial, the defendants called upon Mr. Graham, when negotiations were commenced between him and them for a compromise or settlement of the matter of the opposition to their father's discharge. The defendants testified, in substance, that Mr. Graham, on behalf of plaintiff, first proposed the compromise, and offered to withdraw plaintiff's opposition to their father's discharge if they would pay, or secure the payment of, $1,200; that they said they had no money, but would accept the proposal if they could give satisfactory security, but they wanted a few days to consider the matter. Thereupon it was agreed that Mr. Graham should have the trial postponed until March 29th, to give time to complete the settlement, which he did. On March 24th the defendants returned, and on that day a compromise was effected, according to the terms of which they signed the note and mortgage in suit, and placed them in Mr. Graham's hands, with the understanding that they should be considered delivered, and take effect, when he should withdraw the plaintiff's opposition to their father's discharge, provided no other creditor should have filed opposition to such discharge; but if plaintiff's opposition should not be withdrawn, or if any other creditor should file opposition before the discharge, the note and mortgage were to be returned to defendants. That it was also agreed that defendants should be credited on their note the amount of dividends which should be paid by the

assignee on the plaintiff's claim against the insolvent, which, it was then understood, would not exceed $200. Defendants further testified that there was no other consideration for the note and mortgage than above stated.

The minutes of the court in which the insolvency proceeding was pending show that on March 22d the trial of the matter of opposition to the discharge of the insolvent was postponed, at request of Mr. Graham, by stipulation with opposing counsel, until March 29th, and that on March 29th the opposition of plaintiff to the discharge of the insolvent was withdrawn by Mr. Graham as attorney for plaintiff, the minute of the withdrawal being as follows: "Insolvency of Albert Estes. Now comes G. B. Graham, attorney for Benicia Agricultural Works, and in open court withdraws his opposition to the discharge of the insolvent heretofore filed." Plaintiff's counsel objected and excepted to all oral testimony as to the transaction, on the ground that the only agreement made had been reduced to writing, and signed by defendants, and they contend here that the written instrument so signed is the only competent evidence of the transaction; and there is no question that the following instrument was drawn by Mr. Graham, and signed by the defendants:

"March 24, 1890.

"Whereas, L. W. Estes and M. Estes have this day given their notes to Benicia Agricultural Works for the sum of $1,200, payable in seven months from this date, and the said L. W. Estes executed a mortgage on certain real estate to secure said note, which said note was given to secure the amount by them agreed to be paid to the Benicia Agricultural Works for the transfer to them of a certain claim by the said Benicia Agricultural Works against the estate of Albert Estes, an insolvent, which proceedings in insolvency were begun and are pending in the superior court of Fresno county, state of California; and it is hereby agreed by the undersigned that said claim so transferred to them by the said Benicia Agricultural Works shall be held by Geo. B. Graham, its attorney, as collateral security to said note and mortgage, and he shall have the right to collect and receipt to the assignee of said insolvent estate for any dividends that may be payable on account of said claim, and credit the same on said note. Said mortgage is not to be recorded until March 29, 1890;

and, in case any creditor shall, of his own motion, file opposition to the discharge of said insolvent before or at that time, said note and mortgage to be surrendered back to them, and they to retransfer said claim.

"L. W. ESTES.
"M. ESTES."

This instrument was put in evidence by plaintiff, and is admitted to have been drawn by Mr. Graham, and signed by defendants, at the time the note and mortgage were signed.

Mr. Graham testified that this instrument, as written, is the agreement that was entered into, and contains all its terms; that he never agreed to withdraw plaintiff's opposition to the discharge of the insolvent, except at the request of defendants; that he told defendants the opposition to the discharge would be within their control. "They told me they wanted to dismiss it. Then I said, 'I will go up to court, and dismiss it on Saturday (March 29th) on your request'; and I did dismiss it for them, and not for arybody else. . . . . There was not a word said about my signing the agreement; never intended to sign it. . . . . I notified the Benicia Agricultural Works of the mortgage, and they ratified everything I did with it." He further testified that defendants first proposed the settlement or compromise, and that he immediately said to them: "You can't settle it or compromise anything with me. The only way you can do in the matter is to buy the claim. . . . . I don't think I told them it would be illegal to do so. I knew it myself, and just shut it all off by telling them they need not say anything except about the purchase of the claim. I told them if they purchased the claim they could dismiss the opposition—control it; the right to control it would pass to them. . . . . I told them I would do whatever they directed me to do; it would be under their control. Did not tell them I would have them substituted in the proceeding, and appear as their attorney. I did not have them substituted in the proceeding. I appeared as their attorney in the way I did. They told me to dismiss, and I did it. Did not make any intimation to the court of any change in the relationship. I simply dismissed it. I was in the case as attorney for the Benicia Agricultural Works." Being asked to explain the last part of the written agreement the witness said: "I think I can state that so you can understand it. They said they

didn't want to buy the claim if there was going to be other opposition filed, . . . . and this agreement was written up in accordance with what was then understood and agreed between us—that in case other opposition should be filed, that then I was to surrender it, and there was to be no sale; if there was no other opposition filed, then it was to be an absolute sale. Question. Then, unless the withdrawal of the opposition you had filed could be made effective, there was to be no sale. That was the understanding, was it? Answer. You can draw your own conclusions about that. I have stated to you what was said. They directed me to dismiss the opposition after I had turned it over to them. Q. Then you have no other explanation than that you have given of that last clause of the agreement? A. The clause explains itself. It is according to the terms of the agreement between us. There is no explanation to be given growing out of the contract or agreement between the parties. I have an opinion about it, but my opinion, the court has said, was not proper to be given. No, sir; I have no explanation to make." The testimony of the defendants that it was estimated and understood that the dividends to be paid by the assignee on plaintiff's claim against the insolvent would not exceed $200 was not disputed.

Conceding the truth of Mr. Graham's testimony as to facts, exclusive of his opinion as to their legal effect, and considering only such parts of the testimony of the defendants as are undisputed, it seems too clear to admit of debate that the entire substance of the consideration for the note and mortgage consisted of the withdrawal of plaintiff's opposition to the discharge of the insolvent, Albert Estes. Mr. Graham must have known that the defendants had in view, and sought to accomplish, only that object; and it is clearly apparent that they received, and were to receive, nothing else beneficial to themselves or detrimental to the plaintiff. It was not disputed that the parties understood that the dividends on plaintiff's claim against the insolvent would not exceed $200, nor is it pretended that such understanding was incorrect. Therefore, the formal assignment of that claim, on the condition that plaintiff should continue to hold it as collateral security, and receive and credit the dividends on the note, did not operate as a consideration, or even as a partial consideration,

for the note.   The note and the conditional assignment of the claim, having been parts of the same transaction, are to be construed together, and in the light of the circumstances of the case; especially the circumstances that the parties understood that the dividends on plaintiff's claim against the insolvent would not exceed $200, and that the sole object of the defendants was to secure the discharge of their father.   By so construing the note and written agreement, any attempted disguise is made transparent, the alleged transfer of plaintiff's claim against the insolvent is discovered to be mere form without substance—a mere subterfuge—and the real nature of the transaction is clearly revealed.   The provision that the claim, said to have been assigned, was to be held and the dividends thereon collected by plaintiff and credited on the note, becomes merely a qualification or contingent limitation of the liability of defendants on their note, the only effect of which is that, instead of being unconditionally obligated to pay $1,200, as expressed in the note, the defendants are only bound to pay $1,200, less the amount of the dividends paid plaintiff on its claim against the insolvent.   It is the same as if the contingent qualification or limitation had been expressed in the note.

If the views above expressed as to the effect of the evidence are correct, it follows that the consideration for the note and mortgage was illegal, because "contrary to the policy of express law," in the sense of the second subdivision of section 1667 of the Civil Code, and consequently the note and mortgage are void.   The authorities to this effect are numerous, only a few of which, specifically applicable to this case, need be cited.   The facts of the case of Bell v. Leggett, 7 N. Y. 176, are almost entirely similar to the facts of this case.   The bankrupt proceedings in question in that case were under the United States bankrupt act of 1841, the policy of which in respect to withdrawing opposition to the discharge of the bankrupt cannot be distinguished from that of our insolvent act of 1880.   Indeed, that case was cited by our code commissioners as an example falling under the second subdivision of section 1667 of the Civil Code: See note 2 under that section in Deering's Code.   It is also cited as authority, on a point similar to the principal point in this case, in Estudillo v. Meyerstein, 72 Cal. 317, 13 Pac. 869.   The case of Rice v.

Maxwell, 53 Am. Dec. 85, is also specifically applicable to this case. As having a general bearing upon the main question in this case the following cases may be consulted: Valentine v. Stewart, 15 Cal. 403; Beard v. Beard, 65 Cal. 354, 4 Pac. 229; Lumber Co. v. Hayes, 76 Cal. 387, 18 Pac. 391; Factor Co. v. Adler, 90 Cal. 110, 27 Pac. 36; Kreamer v. Earl, 91 Cal. 112, 27 Pac. 735. The point made by counsel for respondent to the effect that the oral testimony was incompetent is not tenable: Buffendeau v. Brooks, 28 Cal. 642, and cases above cited. For the reason that the finding excepted to is not justified by the evidence, I think the order and judgment should be reversed, and a new trial granted.

We concur: Temple, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order and judgment are reversed and a new trial granted.