[L. A. No. 27756.   In Bank.   May 21, 1964.]

WALTER M. KEENE et al., Plaintiffs and Respondents, **v.** FRED HARLING, Defendant and Appellant.

Granger & Moe and Lewis A. Moe for Defendant and Appellant.

Young, Wooldridge, Paulden & Self, John B. Young and Robert J. Self for Plaintiffs and Respondents.

PETERS, J.—Walter M. Keene and his wife brought this action against Fred Harling and Morris Blum for the balance due on a promissory note given as part of the purchase price for a business involving coin-operated machines. Defendants' sole defense was that the sales agreement was illegal. The trial court found that the transfer of a minor part of the consideration given by the Keenes in exchange for the note was, in fact, illegal, but held that the illegal portion was severable from the remaining consideration. Judgment was therefore entered in favor of the plaintiffs for the amount due on the note, less the value of the illegal consideration. Defendant Harling alone appealed.

The facts are as follows: For several years prior to September 1, 1955, Walter Keene owned and operated a coin machine route. On that date he and his wife entered into a conditional sales agreement whereby they sold the route to defendant Harling, together with all the equipment of the business. The Keenes agreed to sell the route and equipment, and to refrain from competing with the buyer for five years. Harling, in return, agreed to pay $50,000 for the route and equipment, $10,000 at the time of execution, plus $750 per month with interest, except that the last four monthly pay-

ments were to be $1,000 each, with interest. In case of default in payments the entire balance due on the note could be accelerated. At the time of trial, the note was in default and the unpaid balance was $32,500.

Defendant Blum's liability on the note arises out of the following facts: Subsequent to the execution of the conditional sales agreement, defendant Harling entered into a partnership with Blum for the purpose of operating the coin machine route acquired from the Keenes. This partnership was later dissolved, and, pursuant to the dissolution agreement, Blum covenanted to make the payments to the Keenes as they came due. Thus Blum became liable on the note to the same extent that Harling was liable.

The coin machine business consisted of its goodwill and certain tangible personal property. Several "bingo-type" pinball machines were part of the tangible property. The court found that the sale of these machines was illegal under Penal Code section 330b. None of the parties now contends otherwise. The court additionally found that the market value of the illegal machines at the time of the sale totaled $4,600. It deducted that amount from the $32,500 still owing, and entered its judgment for the balance, plus interest and costs, in favor of the Keenes. The Keenes do not object to this deduction. Thus the trial court concluded that the contract was severable. It is the correctness of this determination that is here involved.

■ "... Whether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court according to the intention of the parties. If the contract is divisible, the first part may stand, although the latter is illegal. (Civ. Code, § 1599.)"[1] (*Pacific Wharf etc. Co.* v. *Standard American Dredging Co.,* 184 Cal. 21, 24 [192 P. 847]; see also *O'Connell* v. *Zimmerman,* 157 Cal.App.2d 330 [321 P.2d 161]; *Brown* v. *Freese,* 28 Cal.App.2d 608 [83 P.2d 82].) ■ It has long been the rule in this state that " 'When the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the Courts will make the distinction, for the ... law ... [divides] according to common reason; and having made that

---

[1]Section 1599 provides: "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."

void that is against law, lets the rest stand. ...' '' (*Jackson* v. *Shawl*, 29 Cal. 267, 272.) ▮ Thus, the rule relating to severability of partially illegal contracts is that a contract is severable if the court can, consistent with the intent of the parties, reasonably relate the illegal consideration on one side to some specified or determinable portion of the consideration on the other side. This rule has been frequently applied in this state.

In *Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609 [254 P. 956, 255 P. 805, 53 A.L.R. 725], the court severed the obligation to pay usurious interest from the obligation to pay the principal. The court stated:

"Of course, if it were impossible to ascertain how much of the sum contained in the note of $34,000 was principal and how much thereof was imputable to interest, there might well be made the contention that inasmuch as some of the transaction was void because prohibited by the statute, all should be so declared, but such is not the fact. The evidence shows without conflict that the item of $1,020 was a three per cent commission, and that the remainder of the sum, to wit, $32,980, was actually delivered to and received by the respondents as principal. The interest is, therefore, clearly severable from the principal. The fact that they are contained in the same instrument is no argument against such a construction and, as above noted, the statute declares only the obligation to pay interest void, but nowhere assails the integrity of the obligation to repay the principal." (200 Cal. at p. 624.)

Of course, if the court is unable to distinguish between the lawful part of the agreement and the unlawful part, the illegality taints the entire contract, and the entire transaction is illegal and unenforceable. Thus, in *Santa Clara Valley Mill & Lumber Co.* v. *Hayes*, 76 Cal. 387 [18 P. 391, 9 Am.St. Rep. 211], the defendant agreed to sell to plaintiff two million feet of lumber at a certain price. Defendant also agreed to refrain from selling to other buyers. This, of course, was an illegal covenant. The court stated:

"If the whole vice of the contract was embodied in the promise of the defendants not to sell lumber to other persons, the illegality would lie in the promise alone, and it might be contended with great force that this promise was divisible from the agreement to sell. Under the findings of the court, however, the illegality inheres in the consideration.

"The very essence and mainspring of the agreement—the illegal object—'was to form a combination among all the

manufacturers of lumber at or near Felton for the sole purpose of increasing the price of lumber, limiting the amount thereof to be manufactured, and give plaintiff control of all lumber manufactured,' etc.

"This being the inducement to the agreement, and the *sole object* in view, it cannot be separated and leave any subject-matter capable of enforcement, . . .

". . . . . . . . . . . .

"The good cannot be separated from the bad, or rather the bad enters into and permeates the whole contract, so that none of it can be said to be good, and therefore the subject of an action." (76 Cal. at p. 393.)

*Teachout* v. *Bogy,* 175 Cal. 481 [166 P. 319], relied on by defendants, is in accord with the rule here under consideration. Defendants there agreed to purchase a lease, a liquor license and certain quantities of alcoholic beverages from plaintiff's assignors. Under existing law, the liquor license was personal to the licensee and could not be transferred. "The contract was therefore an agreement whereby the defendants were to carry on the saloon business in violation of express law." (175 Cal. at p. 485.) The court stated that: "It cannot be successfully claimed that the covenant to buy the beer and liquors from the parties of the first part was a separable part of the contract, free from the taint of the illegality arising from the contemplated violation of law. According to the intention of the parties, it was this beer and liquor which the defendants were to sell in the saloon without a license in violation of the law. Moreoever, this performance of the covenant was a part of the benefit which the defendants were to render to the other parties in consideration of the transfer of the lease and license, a consideration therefor in addition to the sixteen thousand five hundred dollars agreed to be paid. Consequently the covenant was as much affected by the illegality as the promise." (175 Cal. at p. 488.)

In the instant case the trial court found that the market value of the illegal portion of the consideration supplied by the sellers was $4,600. This finding is supported by substantial evidence. Defendant Blum testified that the market values of these machines were published monthly in a national trade publication which is similar to the "blue book" employed by used car dealers, and that the average total listed price for the illegal machines at the time of the sale was $4,600.

The trial court additionally found "That the promise of defendant Fred Harling in said Conditional Sales Agreement

to pay the purchase price of $50,000.00, and perform the other terms therein, was not induced by the sale of the bingo-type machines thereunder and said machines were not an integral part of the consideration received by defendant Fred Harling.'' Of course, an appellate court must interpret the trial court's findings to support the judgment, if possible. This finding indicates that the buyer did not enter into the transaction because of the illegal machines and that the illegal machines were of such minor importance that they did not ''taint'' the otherwise legal consideration. This finding is also supported by substantial evidence. Defendant Blum testified that the legal personal property was worth in excess of $17,000. Included in the legal personal property were an automobile, a truck, office furniture and equipment, repair shop equipment, approximately 46 coin-operated phonographs, about the same number of cigarette dispensing machines, numerous legal pinball machines, eight or more coin-operated scales and several candy and popcorn dispensing machines. Blum also testified that the goodwill of the business was valuable because Keene had such well-established relationships with the various owners of the premises on the route that it would be impossible to compete with him at those locations.

Since the consideration on the buyer's side was money, the court properly construed the contract by equating the established market price of the illegal machines to a portion of the money consideration. ■ ''The rule is well settled that where several things are to be done under a contract, if the money consideration to be paid is apportioned to each of the items to be performed, the covenants are ordinarily regarded as severable and independent.'' (*Pacific Wharf etc. Co.* v. *Standard American Dredging Co., supra,* 184 Cal. 21, 25.) ■ The argument that the court cannot apportion because the parties did not expressly apportion is without merit.[2] That argument exalts form over substance. (See *Haines* v. *Commercial Mortgage Co., supra,* 200 Cal. 609, where, as already pointed out, the court held that the fact that the interest and balance due were stated together did not prevent the court from apportioning where other evidence delineated between the lawful and unlawful parts.)

It also should be pointed out that the parties did distinguish between the legal and illegal considerations. Their con-

---

[2]Language in *Ryan* v. *Mike-Ron Corp.,* 226 Cal.App.2d —— [37 Cal.Rptr. 794], appears to be inconsistent with what is contained herein. Insofar as it is inconsistent that language is disapproved.

tract provided that "In the event that the County Authorities determine that 'bingo-type games' are inoperable or illegal, monthly payments on the purchase price hereinbefore stipulated shall be reduced in the sum of One Hundred Fifty Dollars ($150.00) per month, but all other provisions of this agreement shall remain in full force and effect." This provision is subject to several constructions. It can be construed to mean that the parties intended that the buyer should assume the risk of inoperability or illegality subject only to a reduction in the rate of payment. This construction is not unreasonable, because the illegal machines were valuable. Roberts, a defense witness, testified that these illegal machines could be converted into legal machines with about eight hours of labor. As long as the machines were not seized by the authorities the buyer could make the conversion.

On the other hand, the provision can be construed to mean that neither party attached value to the illegal machines since the price was to be the same even though the county authorities determined that the machines were inoperable. Under this view, the buyer paid $50,000 for only the legal consideration. This construction suggests that the judgment should have been for the full amount owing on the note, with no discount. However, under either construction, the trial court's judgment must be upheld because the sellers have not appealed from the judgment, and in fact admit in their petition before this court that the discount was proper.

The trial court's result is not inconsistent with Civil Code section 1608. That section provides that "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." In the annotation to this section in the Field Civil Code, from which section 1608 was copied, the purpose of the section is declared to be: "This principle is deducible from all the cases taken together, though not to be found thus stated in any one case. Thus there is no doubt that, *if the consideration is single, or in other words indivisible,* its partial illegality is fatal to the contract [citations]. The limitations of the rule are conformable to the principle of sections 778 [Civ. Code, § 1598] and 779 [Civ. Code, § 1599]." (Italics added.) (Field's Draft of the Civil Code for the State of New York, 1865, § 783, p. 240.) Thus section 1608 was not intended to set forth a test of severability. Rather, it was intended to state the result where the court otherwise determines that a partially illegal contract is not severable.

(See *Teachout* v. *Bogy, supra,* 175 Cal. 481; *Santa Clara Valley Mill & Lumber Co.* v. *Hayes, supra,* 76 Cal. 387.)

The judgment appealed from by defendant Harling is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Tobriner, J., and Peek, J., concurred.

Appellant's petition for a rehearing was denied June 16, 1964.