MORTIMER LENT v. WILLIAM SHEAR, ALEXANDER B. GROGAN, ANTHONY LUDLUM, AND JOHN A. CARDINELLI.

MORTGAGES—STATUTE OF LIMITATIONS.—If one who has a mortgage upon a tract of land leaves the same with another who has a subsequent mortgage upon the same land, and makes him his attorney in fact, with knowledge of such subsequent mortgage, with power to demand, collect, and receive the monthly interest, but without any power or any instructions to enforce the collection of the mortgage, and without the attorney in fact undertaking the trust of enforcing the collection of the mortgage, and while in the hands of the attorney in fact the mortgage becomes barred by the Statute of Limitations, the attorney in fact has not been guilty of such fraud as will preclude him, when made a party to a suit afterwards brought to foreclose the mortgage, from taking advantage of the Statute of Limitations to prevent the same from having priority over his subsequent mortgage. Had the attorney in fact undertaken the trust and assumed

46

the duty of enforcing the mortgage by legal proceedings, and failed to do so until it was barred by the Statute of Limitations, he would have been precluded from availing himself of the statute as a defense in a suit afterwards brought to foreclose it, and the same would still be entitled to priority over his own mortgage.

*Lord* v. *Morris,* 18 Cal. 484, and *McCarthy* v. *White,* 21 Cal. 501, affirmed as to the right of a subsequent mortgagee or purchaser to plead the Statute of Limitations to defeat the enforcement of the lien of a prior mortgage.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Patterson, Wallace & Stow,* for Appellant.

The finding admits that, as matter of *law,* the statute would bar the plaintiff as against Grogan; but it is said that in *equity* the defendant Grogan shall not avail himself of the defense of the statute. This is supposed to rest upon some *misconduct* of Grogan in relation to the notes and mortgages of Lent, by which they were permitted to become barred.

The Court below finds as a fact that Grogan was the agent by parol of Lent for the foreclosure of these mortgages. That finding is alike unsustained by *proof* or *law.*

The record shows that the defendant Grogan held a special letter or authority from Lent to *collect interest only.* Would a payment to him of the *principal* by Shear have been a valid payment under that power? Certainly not; the power being *special,* as contradistinguished in law from *general,* is *strictly construed.*

"Indeed, all written powers, such as letters of attorney or letters of instruction, receive a strict interpretation, the authority never extending beyond that which is *given in terms,* or is absolutely necessary for carrying the authority so given into effect." (Dunlap's Paley's Agency, 192.) Now, upon this general strict construction of *all* powers of attorney, is *superadded* another and yet more strict rule of *construction,* when a special or particular power is under consideration.

"There is a wide distinction between general and particular agents. If a person be appointed a general agent, as in the

case of a factor for a merchant residing abroad, the principal is bound by his acts. But an agent constituted for a *particular* purpose, and with a *limited* and *circumscribed* authority, cannot bind the principal by any act in which he exceeds his authority," etc. (Dunlap's Paley's Agency, 203.) "But a *special* agent who is employed about one specific act, or *certain specific acts only*, does not bind his employer unless his authority be strictly pursued," etc. (Id. 201.)

But the provisions of this written power are *so special*, (being confined absolutely to the *collection of interest only*,) that there is no room for construction, and there are not presented here the *general words* which usually give rise to *difficulties in construing the instrument.*

If, then, the debtor Shear *could not safely* have paid to Grogan the *principal debt* (as contradistinguished from the interest) owing by him to Lent, then it was not the *duty* of Grogan to collect it. Could Grogan, under that power, have released or discharged the Lent mortgages upon the records, under Articles 374 or 2,993, Wood's Digest? Certainly not; nor had he any authority to foreclose these mortgages. If he had, where did he get it? If he had attempted it, and *expenses had been incurred*, Grogan would have been called upon to *produce his authority* to incur those expenses, and the inquiry would at once have arisen—Can an agent, authorized to collect *interest* only, collect *principal* also? Can he *enforce* its collection?

If an agent is expressly empowered to collect *monthly accruing interest*, does it not amount to a positive negative upon his power to collect principal? ("*Expressio unius est exclusio alterius.*")

*Shafter & Goold,* for Respondents.

Independent of any direct and express power to foreclose in terms, it is indisputable that the power was given, and in writing, to collect the interest. This power to collect necessarily involves the power to enforce collection in any mode which the agent may choose to employ. One of these modes

was by the foreclosure of the mortgages, and although that might involve the collection of more than the interest, it would only be an unavoidable incident arising from the nature of the power and the rule of law which, in such cases, would compel the Court to give complete relief, and not to dole it out by piecemeal.

But as a mere question of power, it must be undeniable that :

1st. The power to collect the interest confers the power to enforce collection.

2d. That the power to enforce collection implies the power to foreclose.

3d. The power to foreclose necessarily carries the incident of collecting the whole amount, both principal and interest.

The rule laid down by writers on agency is, that the power given in terms will be extended to whatever is necessary and proper for carrying the authority so given into full effect. (Story on Agency, §68.)

Nor can Grogan escape the charge of constructive fraud upon another ground. It was his duty, as agent, to conserve the debt; out of the debt arose the interest, of which he had especial charge; if he permitted the debt to be destroyed, the interest was destroyed with it; his power over the one necessarily implied sufficient power over the other to preserve the one which was the subject of his agency. His remedy was simple and easy without resorting to suit at law. He had only to apply to the debtor for a renewal in writing of the promise to pay, and we have shown that his mere request to the debtor would have been sufficient to accomplish that object. His failure to do this is a fraudulent neglect, if ever there was one, and will certainly be so adjudged in a case where he is personally and the only one to be benefited by the fraud.

The diligence here insisted on is only ordinary diligence, such as a prudent man would always exercise in carrying on his own business. (Story on Agency, §183, *et seq.;* Story on Bailment, §186, *et seq.*)

In the relation of principal and agent, the rule of the law

demands "*uberrima fides*" in all transactions between the parties.    (1 Story Eq. J. §§218, 315.)

By the Court, SAWYER, J.

Appellant relies principally upon the cases of *Lord* v. *Morris*, 18 Cal. 484, and *McCarthy* v. *White*, 21 Cal. 501. Respondents insist that there are elements in this case which distinguish it from the cases cited, and withdraw it from the operation of the Statute of Limitations as construed in those cases.    If mistaken in this, respondents' counsel then earnestly insist that those decisions are erroneous, and urge the Court to re-examine the questions decided, and if found to be so, to overrule the cases.

Mr. Justice Norton, in *McCarthy* v. *White*, said : " I concur in the decision of this case upon the ground that both the questions upon which there could be any argument upon principle have been decided by this Court in the case of *Lord* v. *Morris*, and that these are questions of that character that, once deliberately decided, and after having stood for several years as rules to govern transactions, they should not be opened merely to consider again the weight of conflicting decisions and opposing reasons."    These considerations operate with still greater force now.    The questions arise upon the construction of a statute of very extended and general application, and frequently set up as a defense in this State.    *Lord* v. *Morris* was decided three years ago.    Three sessions of the Legislature have been held since the announcement of the decision, and no amendment of the Act upon the point decided has been made.    Both the Courts and the Legislature have acquiesced in the principles announced in the decision. Important rights may in many instances have accrued under it, and for this reason we should not feel at liberty to overrule the case, even if we should arrive at a different conclusion from that attained by the learned Justices who decided it. Entertaining these views, we do not feel it incumbent on us to re-examine the reasons upon which the decisions are based.

The right of action as to defendant Grogan was barred by the statute, as construed in *Lord* v. *Morris*, and *McCarthy* v. *White*, before referred to, and in *Low* v. *Allen*, *ante*, 141. The only question is whether the statute was allowed to run till the action was barred in consequence of a breach of trust on the part of Grogan, by which such a fraud was practiced by him upon the rights of Lent, as to render it inequitable to permit him to avail himself of the fruits of his breach of trust and fraud by setting up the bar as a defense. The facts are as follows :

On the 30th of July, 1853, defendant Shear executed to Hadder a note for two thousand dollars, payable three months after date, and secured it by a mortgage on the lands described in the complaint, which note and mortgage were assigned to plaintiff on the 30th of May, 1854.

On the 22d of August, 1853, said Shear executed to defendant Grogan a note for four thousand dollars, payable six months after date, and secured it by a mortgage on the same land.

On the 1st of April, 1854, said Shear executed to plaintiff another note for two thousand five hundred dollars, payable one year after date, also secured by a mortgage on the land.

Soon after the purchase of the Hadder note and mortgage, plaintiff left California for New York, his permanent residence. Before his departure for New York he placed the two notes and mortgages in the hands of defendant Grogan, together with a power of attorney authorizing Grogan to collect the interest on said mortgages. The Court finds that soon afterwards, to wit : before the 16th day of October, 1854, plaintiff " gave him (Grogan) power by parol to enforce the collection of said notes by foreclosure of the mortgages," to which latter finding appellants except, as not being supported by evidence. Defendant Grogan retained the notes in his possession till February, 1858, collecting interest from time to time and remitting it as collected, charging commissions. But no interest appears from the evidence to have been collected or received by Grogan after the spring of 1855. No suit had been commenced to foreclose the Hadder mortgage, and no

written acknowledgment by Shear had been obtained or requested by Grogan when the four years had elapsed after the note fell due. Grogan, without giving notice to plaintiff, commenced suit to foreclose his own mortgage, on the 7th of December, 1857, before it was barred, but after the bar of the statute had attached to the Hadder note and mortgage. In February, 1860, Shear paid to plaintiff, on the Hadder note, one hundred dollars, and fifty dollars more on the 5th of March, 1863, and on the latter date gave a written acknowledgment of such payments, signed by him.

Upon these facts found by the Court, the conclusion of law was deduced, " that, in equity, the defendant Grogan is not permitted to set up the Statute of Limitations against the plaintiff," and that plaintiff is entitled to have the amount due on the Hadder mortgage first satisfied out of the proceeds of the sale of the mortgaged premises, before the payment of the mortgage of defendant Grogan; and a decree was entered in accordance with this conclusion, from which decree and the order denying a new trial, Grogan appeals.

There is no finding as a fact that Grogan intentionally allowed the plaintiff's cause of action to be barred for the purpose of enabling himself to take advantage of the bar to acquire the first lien on the property, or that he acted in any respect with a fraudulent motive; nor does the testimony appear to us to justify such a finding.

We cannot perceive that the facts of this case present a stronger case against defendant, Grogan, than that of *McCarthy* v. *White et al.* presented against Kelly. In some respects that case presented stronger equities in favor of the plaintiff than this; for in that case the plaintiff was ignorant of the adverse interest of his agent, Kelly, whereas in this, the plaintiff was perfectly aware of the mortgage of Grogan, and that not only the principal, but the interest, was longer in arrears than on his own. Besides, there is nothing in the findings, or even in the evidence to show that any discretion was given to Grogan as to bringing suit or enforcing payment, or that he had any instructions, or made any promise to bring suit with-

out further *consulting* with plaintiff. The finding only extends to the power to collect. On the contrary, upon looking at the evidence, which is all in the record, to see its bearing upon points not embraced in the finding, we find from the letters of the plaintiff, and evidence in which there is no conflict, that plaintiff had himself the question of the expediency of foreclosing under consideration. In a letter to Grogan, plaintiff stated that he would express his views upon the question in his next, and suggested that Grogan should urge the prompt payment of his own (Grogan's) interest. This is the last that is heard of him in the evidence. It is not found, nor does the evidence show, that plaintiff relied upon Grogan to take legal measures to enforce the collection of the notes, or that it was incumbent on Grogan to do so. The note was some seven months overdue when plaintiff purchased it and when it was left with Grogan. Although long overdue, it was evidently purchased with an intent to allow it to run at interest. It was not left with Grogan for immediate collection. He was not an attorney at law. But the object, as expressed in the power of attorney, was "to demand, collect and receive the monthly interest as the same shall become due and payable." Had plaintiff expected Grogan to institute suit, he would scarcely have tolerated a delay of years, without taking the matter out of his hands—certainly not without remonstrance. It would seem from the evidence that whatever "power" Grogan may have been invested with, plaintiff exercised his own judgment as to whether payment should be enforced or not. He had been in California, purchased the note and mortgage while here, and he must be presumed to know the law with reference to the limitation of actions. Like the case of *McCarthy* v. *White*, there is no finding as to the duties or undertakings of Grogan; the finding is limited to the fact that he had "power in writing" to collect the interest, and "power by parol" to collect the principal; but it is not clear upon what evidence the latter finding was based, unless it was inferred from the acts of Grogan. There is no direct evidence to support it, while there is the positive testimony of Grogan

to the contrary; and soon after giving the written power he left the State and does not appear to have ever returned. The case is clearly within the principle of *McCarthy* v. *White,* on the question growing out of the agency.

But there is another view which seems to be entitled to weight. The plaintiff has sustained no injury in consequence of the neglect of defendant Grogan to commence suit against Shear. Shear has not set up the Statute of Limitations, and the plaintiff has obtained, by his decree foreclosing the mortgage as to Shear, precisely the same relief as against Shear, and Shear's interest in the land, that he would have obtained had the suit been commenced within four years after the right of action accrued. The postponement of the Hadder mortgage to Grogan's, by reason of the bar of the Statute of Limitations, results from the failure of Grogan to commence suit against himself, and not his failure to commence suit against Shear, or to procure a written acknowledgment of indebtedness from Shear. Upon the principles of the decision of *Lord* v. *Morris,* 18 Cal. 484, and *Low* v. *Allen,* (*ante,*) neither an acknowledgment of the indebtedness in writing by Shear, nor the commencement of a suit to foreclose the Hadder mortgage against Shear would have prevented the running of the statute as against Grogan, unless he also should be made a party. The Hadder mortgage was due on the 3d of November, 1853, and a right of action to foreclose the mortgage against Grogan—whose mortgage bears date August 22, 1853 —accrued on that day. A suit against Shear would not prevent the statute from running upon a cause of action against Grogan, even if dependent upon the same instrument. The mortgage is not a conveyance under our system; it gives no estate in the land, or interest available otherwise than by suit of foreclosure, judgment and sale. In other words, it only creates a lien, a cause of action to be enforced against the land. Under the decisions in *Lord* v. *Morris,* and *Low* v. *Allen,* the mortgage is an instrument within the meaning of the Statute of Limitations, distinct from the instrument constituting the evidence of the debt; and under the nineteenth section of the

47

Statute of Limitations, if not under the fourteenth, the cause of action founded upon the mortgage is barred in four years, the same time as the cause of action founded upon the note. On the theory of these cases, when the mortgagor conveys the equity of redemption, (if, indeed, this term may be used under our system to designate the estate of his mortgagor) the debt and the security, and consequently the causes of action founded on them, respectively, became separated—the cause of action upon the note continuing against the maker and mortgagor, and the cause of action upon the mortgage against the property following the property, and attaching itself to the grantee. Henceforth no act of the mortgagor, and no proceeding against him alone, can affect the cause of action following the land conveyed and attaching itself to the grantee, or can affect such grantee. And upon this theory defendant, Grogan, set up the bar to the cause of action existing against himself, and not the bar to the cause of action existing against Shear, even though the action may be barred as to both.

Obtaining a written acknowledgment of the indebtedness from Shear, or commencing suit against him would, therefore, have been of no avail to prevent the bar of the statute as to Grogan, without Grogan himself becoming a party to the renewal of the contract, or to the proceedings for foreclosure. Unless it was clearly the duty of Grogan, as agent of Lent, to commence suit against himself to foreclose the Hadder mortgage, there was no such fraud on his part as would preclude him from availing himself of the defense set up. Undoubtedly, if he undertook the trust and assumed the duty of enforcing the demand against himself, or even generally, and the plaintiff relied on him to do it, he was bound to execute the trust in good faith. But the Court has not found, and in our opinion the evidence would not justify a finding, as a fact, that he assumed this duty, or that plaintiff relied on him to enforce collection at all, either as against Shear or himself, or that there was any fraud. We are not satisfied, from the evidence, which is all in the record, that the discretion was left with Grogan. To our minds, the contrary is the more reason-

able inference from the evidence. Shear was a cousin of plaintiff, and this may be the reason of his leniency. The interest on the note due him was payable monthly, and more than two years had elapsed since the last payment of interest before the bar of the statute attached. He was informed by Grogan of the exact condition of affairs—knew of Grogan's mortgage, and that the interest on it was longer in arrears than on his own—never gave any instructions to foreclose, but on the contrary had the expediency of foreclosing himself under advisement the last time he was heard from, so far as is shown by the evidence. It seems impossible to come to any other conclusion from the evidence in the record, than that Lent exercised his own discretion and did not expect or rely upon Grogan to commence suit even against Shear, and much less against himself without special instructions. But the Court has not passed upon these points, or found that there was, in fact, any fraud on the part of Grogan. Without a direct finding upon points, then, and without some evidence more satisfactory than is found in the record, we cannot conclude that there was a fraudulent neglect on the part of Grogan. The presumption will not be lightly indulged, that the plaintiff, under the circumstances disclosed by the record, and knowing, as he did, the adverse interest of Grogan, would employ Grogan as agent to prosecute a suit against himself, or that Grogan would accept such a trust, or that plaintiff would rely upon him to perform such service without specific instructions, or a special agreement to do so.

The case of *McCarthy* v. *White* was not decided till after the judgment was entered in this case, consequently the Judge who tried it did not have that decision before him.

The judgment must be reversed, but that the question as to fraudulent neglect of duty on the part of Grogan may be more fully investigated, we think there should be a new trial—and it is so ordered.

Mr. Justice SHAFTER, having been of counsel, did not participate in the decision of this case.