[S. F. No. 5215. Department Two.—August 25, 1911.]

# CALIFORNIA RAISIN GROWERS' ASSOCIATION (a Corporation), Respondent, v. ANDREW ABBOTT et al., Appellants.

CORPORATIONS—RAISIN GROWERS' ASSOCIATION—DUE INCORPORATION AD-
MITTED—BY-LAWS UNRECORDED—UNTENABLE OBJECTION TO ACTION.—
In an action by a raisin growers' association, the due incorporation of
which is alleged in the complaint, and admitted by the answer, which
appears to have incorporated as a co-operative association under the
act of March 27, 1895, (Stats. 1895, p. 221), the objection that the
plaintiff cannot maintain the action because it failed to file a copy
of its by-laws with the county clerk, as required by section 5 of that
act, is not tenable.

ID.—ACTION FOR ACCOUNTING WITH RAISIN GROWERS—AGREEMENT FOR
COMMINGLING OF RAISINS—AVERAGE PRICES—PROPER JOINDER OF
CAUSES AND PARTIES.—In an action by the raisin growers' associa-
tion for an accounting with all raisin growers, with which it had
contracted, where it appears that, although each grower separately
contracted with the association in uniform contracts, yet each con-
sented to a commingling of his raisins with those purchased from
other producers, and to accept in payment for his raisins the average
price per pound for all· raisins of like grade, and each is therefore
equitably interested in the fund derived from the sale of the season's
product, held by plaintiff for distribution, a demurrer for misjoinder
of causes and parties defendant was· properly overruled.

ID.—DEBTORS TO FUND AND ATTACHING CREDITORS OF DEFENDANTS PROP-
ERLY JOINED AS PARTIES.—Under section 379 of the Code of Civil
Procedure, providing that "any person may be made a defendant
who has or claims any interest in the controversy. adverse to the
plaintiff or who is a necessary party to a complete determination
or settlement of the question involved therein," not only all the
growers, including those indebted to the fund for money advanced,
but also the attaching creditors of the growers were properly joined
as defendants, because they respectively had interests in the fund to
be distributed.

ID.—DEFENSE OF ESCROW AGREEMENT UNAVAILABLE—ILLEGALITY—
WAIVER.—The defense that the contracts were delivered to the
plaintiff in escrow, by the terms of which they were not to become
operative until eighty-five per cent of the raisin-bearing acreage of
the state was secured by contract, and that such acreage was not
secured, sets forth an illegal agreement not to be tolerated; but
where it appears that the raisin growers so objecting delivered their
raisins under the contracts and accepted money from the plaintiff,
they thereby waived the escrow agreement.

ID.—ACCOUNTING BY AGENT WITH PRINCIPAL—BOOKS OF ACCOUNT—RULE
INAPPLICABLE.—The general rule that an agent accounting with

his principal must show proper books of account, does not apply to this action, the main object of which is not for an accounting, and involves an accounting only as ancillary to its main purpose to have the money in the plaintiff's hands equitably distributed among the growers, whose interest under their agreements was not a matter of bookkeeping.

ID.—JUDGMENT FOR MONEY ONLY REQUIRING CONTRIBUTION TO FUND BY DEFENDANTS OVERPAID.—The only judgment in the action for money is not in favor of the plaintiff, but requiring contribution to the fund by growers overpaid, in the interest of co-defendants, to avoid a multiplicity of suits and to ascertain the proper share of each defendant in the fund.

ID.—DEMAND BY PLAINTIFF UPON DEFENDANTS FOR ACCOUNTING UNNECESSARY.—As the association was asking nothing for itself, but merely sought such accounting as would fix the distribution of the money held by it for its clients, no demand upon the defendants for an accounting was necessary.

ID.—RULE OF EQUITY TO DO COMPLETE JUSTICE—ACCOUNTING—ADJUDGING LEGAL MATTERS.—When a court of equity acquires jurisdiction of an action, its rule is to do complete justice between the parties, and that it will order an accounting and settle the whole controversy, even to the extent of adjudging matters of purely legal cognizance.

ID.—DEFENSE OF CONTRIBUTORS TO FUND—PROMOTION BY PLAINTIFF OF MONOPOLY—COMPLICITY OF RAISIN GROWERS NOT SHOWN—RIGHTS IN FUND.—A defense by those claimed to be contributors to the fund, that the plaintiff was engaged in promoting a monopoly of the raisin trade, is not available, as against the raisin growers, or their right to share equitably in the fund, where there is no pretense that any of the raisin growers interested in the fund to be distributed were *in pari delicto*, or were parties to any such illegal combination. It is certain that their individual contracts involved in the fund were not illegal, and each of them is equitably entitled to his proper share in the fund to be distributed.

ID.—KNOWLEDGE OF ILLEGAL DESIGN OF PLAINTIFF NO DEFENSE.—If it be conceded that the raisin growers knew of the illegal design of the plaintiff to form a monopoly of the raisin trade, that fact alone would not constitute a defense to the action equitably to distribute the fund received, provided it is not made part of their contracts that their raisins sold should be used for that purpose, and they have done nothing in aid or furtherance of the unlawful design.

ID.—PLEADING—AVERMENTS OF FACT—RECEIPT BY SOME GROWERS OF EXCESSIVE SUMS—LESS SHARES.—Averments in the complaint of plaintiff that some of the defendants had received more of the proceeds from the sale of the raisins than the amount to which they were entitled, and that others had received less than their shares, were averments of fact, and not of mere conclusions of law, being founded upon plaintiff's knowledge of the net amount derived

from the sale of the raisins, the number of persons entitled to the benefit of the fund, and the quantity and quality of raisins delivered by each.

ID.—RULES OF PLEADING.—Pleadings should state the ultimate facts, and not probative facts or conclusions of law; but the same averment may be of a fact or of a conclusion of law, according to the context.

ID.—DEFENSE OF ILLEGAL RESTRAINT OF TRADE NOT PROPERLY PLEADED—RESERVATION OF RULING NOT PASSED UPON IMMATERIAL.—Where the defense that the contracts were part of a conspiracy in restraint of trade was not so pleaded as to be available, the reservation of rulings upon evidence in support of the defense, upon plaintiff's objection thereto, not finally passed upon, was immaterial error.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

Everts & Ewing, L. L. Cory, Cartwright & Cashin, Snow & Freeman, Johnston & Jones, Jas. Gallagher, M. F. McCormick, J. O. Traber, W. A. Conn, Lewis H. Smith, Geo. B. Graham, A. M. Drew, J. A. Allen, Maurice E. Power, Frank Kauke, F. E. Shepherd, Stanton L. Carter, H. C. Tupper, W. D. Foote, and Sutherland & Barbour, for Appellants.

M. K. Harris and M. B. Harris, for Respondent.

MELVIN, J.—Certain defendants appeal from a judgment and from an order denying their motion for a new trial.

Plaintiff is an association, incorporated under the laws of California for the purpose, among others, as stated in the complaint, of "acting as an agent and factor in the handling and disposal of raisins for individuals, corporations, associations and copartnerships, and having power to contract," as thereinafter alleged.

It appears that in the year 1903, plaintiff entered into contracts with some twenty-eight hundred persons, owners and growers of raisins to pack and sell their crops. These contracts were all just alike, and each provided: 1. That the grower thereby assigned to the association an undivided one-fifth part of his raisins produced that year; 2. That the association

agreed to undertake the inspection, packing, and sale of said entire crops, to establish and maintain uniform grades of raisins, and to procure such packing to be done in conformity therewith; also to make sales under its own trademark and guaranty of quality, and to make said sales as speedily as possible and for the highest obtainable prices; 3. That the growers should cultivate the crops and deliver at packing houses designated by the association; 4. That the association would advance money necessary for the packing, storing, and insuring of the raisins; 5. That at any time after the delivery of the crop the association would make advances upon the raisins so delivered to the amount of at least one cent per pound; 6. That all raisins as delivered should be mingled and sold with other raisins of a like grade and accounted for at the average of prices at which raisins of such grade should have been sold by the association; 7. That the association might hypothecate the interests of the growers as security for the repayment of moneys to be borrowed from third persons; 8. And that the association should turn over to the grower on certain conditions three fourths of the net proceeds of its one-fifth interest in the crop.

Under these contracts vast quantities of raisins were delivered to plaintiff. These were intermingled, packed, and sold, and sums of money were advanced to certain growers, some of them receiving as high as three cents per pound, others less than that and others nothing at all. Large sums of money were borrowed and repaid as authorized by the contracts. When the entire crop had been sold at the average price of less than three cents per pound the association had in its possession a large sum of money which by this action it seeks to have distributed to the growers entitled to share in the funds. It also desires to compel those growers who have been paid more than their ratable proportion of the proceeds of the sales for the season to return the excess in order that all of those who contracted with the association to deliver their raisins to it may be treated alike, each receiving the same allowance per pound as that paid to purchasers of the same grade of raisins. The bill also asks for an accounting, and it includes as defendants, not only the growers who were parties to the contracts above mentioned, but also certain persons who had commenced actions against the association and secured attachments against

its property.   There is also included as a defendant one of the
association's alleged debtors, owing it according to the aver-
ments of the bill, a large sum of money.   But the court found
that this had been paid.

The action was tried, after issue joined, an accounting was
had, and this appeal is prosecuted by some six hundred of the
growers, who had received from the association more than the
share of money to which the court held that they were entitled,
and against whom the judgment runs for the excessive amounts
paid to them severally.

There is nothing in the first point made by appellants that
the association is without standing to bring this action, because
it never filed with the county clerk a copy of its by-laws as
required by statute, for they admitted by answer that plaintiff
was duly incorporated.

The next contention of appellants is that their demurrer for
misjoinder of causes of action and of parties defendant should
have been sustained.   Appellants maintain that as plaintiff
entered into separate contracts with the growers, there is no
basis for a joinder of actions against them; but the answer to
this contention is that although each grower separately con-
tracted with the association, each consented to a commingling
of his raisins with those purchased from other producers, and
each agreed to accept in payment for his raisins the average
price per pound paid for all raisins of a like grade, and each
is therefore equitably interested in the fund derived from the
sale of the season's product and held by plaintiff for distribu-
tion.   Section 379 of the Code of Civil Procedure, provides
that: "Any person may be made a defendant who has or
claims an interest in the controversy adverse to the plaintiff,
or who is a necessary party to a complete determination or
settlement of the question involved therein."   (See, also,
Code Civ. Proc., secs. 578, 579; *Shakespear* v. *Smith,* 77 Cal.
638-641, [11 Am. St. Rep. 327, 20 Pac. 294]; *Wickersham* v.
*Crittenden,* 93 Cal. 17-32, [28 Pac. 788].)

The rule above announced applies with equal force to all the
growers and to the debtor, and the attaching creditors included
as defendants, because the latter parties claim interests in
funds, parts of which at least are involved in the obligation
of the plaintiff to the persons who delivered their raisins to
the association, and which, therefore, should be subjected to a

proper distribution. It may be said as truly in this case as in *People* v. *Morrill,* 26 Cal. 361: "The parties are all interested in the principal question raised by the complaint; the issues tendered are simple and foreshadow no embarrassment to a convenient and orderly trial; and by the joinder objected to a multiplicity of suits has been avoided." (See, also, *Daly* v. *Ruddell,* 137 Cal. 674, 70 Pac. 784], and cases there cited.) That which has been said with reference to alleged misjoinder of parties applies with equal force to the issue of misjoinder of causes of action raised by the demurrer. The vital matter in this action was the distribution of the fund held by plaintiff. The material consideration is not how the different defendants acquired their respective interests in the trust fund to be distributed, but that they do actually have such interests growing out of the contractual relations between plaintiff and defendants, and between the defendants themselves. The demurrers were properly overruled.

By their answers appellants aver that the contracts were delivered to plaintiff in escrow, and were not to become operative until eighty-five per cent of the raisin-bearing acreage of the state was secured by contract; that such percentage was never brought within the control of plaintiff; and that therefore the contracts could not be enforced. A complete answer to this contention is that the growers did deliver their raisins under the contracts, and accepted money from the plaintiff. Even if delivery of the contracts in escrow, with the proviso alleged, were tolerated (and it is not—Civ. Code, secs. 1056, 1626, 1627), the acceptance of the terms of the contracts by the producers of raisins, waived the escrow agreement.

Appellants contend very forcibly that the complaint fails to disclose a state of facts entitling plaintiff to an accounting; that, occupying as it did the fiduciary relation toward the appellants of a factor, it was bound to keep proper books of account containing correct entries of all of its transactions. They cite numerous authorities to the effect that while a principal having reposed confidence in his agent may compel the latter to account where the matters for which an accounting is sought are peculiarly within the knowledge of the agent, the reverse of the rule is not enforced in equity, and that, generally speaking, an agent may not demand an accounting from his principal. There can be no doubt that this is the

rule where an accounting is the principal purpose of the action, but here an accounting was only ancillary to the main purpose of the action, which was to have the moneys in the hands of plaintiff equitably distributed. This was not for a money judgment in favor of plaintiff against defendants. The only judgment for money was that requiring contribution by the defendants who have been overpaid, not to respondent but to other co-defendants. This action obviously was brought to avoid a multiplicity of suits, although there is no formal allegation to that effect. Equity having once taken jurisdiction, it was within the power of the chancellor to grant full relief. The interests of the raisin growers were not mere matters of bookkeeping to be determined from plaintiff's accounts, because there were certain claims against the fund held by the association, which had not been adjusted. An accounting was necessary, therefore, not to establish any claim of money due from the growers to the association, because plaintiff asserted none, but to ascertain correctly how much money each grower was entitled to receive. For this reason no demand upon the defendants was necessary as the association was asking nothing for itself, but merely sought such accounting as would fix the proper distribution of the money held by it for its clients. The rule to be applied in cases of this kind is well stated in 1 Encyclopedia of Law and Procedure, p. 418, as follows: "When a court of equity once acquires jurisdiction upon equitable grounds it will proceed to do complete justice and administer full relief. To this end it will order an accounting, and will settle the whole controversy even to the extent of adjudicating matters of purely legal cognizance." (See, also, Pomeroy's Equity Jurisprudence, sec. 255.)

We now come to the consideration of the special defense that the plaintiff association was organized for the purpose of creating a monopoly of the raisin business of the United States, and that therefore its contracts made in pursuance of this unlawful scheme, were not enforceable. Much evidence was offered on this issue and rejected by the court. Without going into the details of these offers to prove matters pertinent to a showing that the plaintiff was engaged in the upbuilding of a monopoly, it is sufficient to say that nearly all of the rejected testimony, according to the theory of appellants

"tended to show that the plan and scheme of plaintiff was to create a monopoly in the handling and selling of raisins during that season, and that the natural consequence of the acts of the plaintiff was to create an unlawful combination in restraint of trade." If appellants were entitled to establish their thesis, doubtless much of this offered evidence was admissible, but an examination of their pleadings shows that they did not attribute to the defendants, or to any of them, guilty complicity in the alleged scheme for the arbitrary fixing of the price of raisins, not in accordance with the law of supply and demand, and for the exclusion of all raisins from the packing houses except those delivered to plaintiff under contract. The direct objects of the contracts between the association and the growers, were the packing, advertising, and sale of the raisins to be delivered by the producers. These were not illegal purposes, as disclosed by the contracts themselves, and we do not understand the appellants to contend that the growers were parties to the monopolistic scheme. The answer does not contain any averment that the defendants, or any of them, participated in any unlawful design, but the appellants invoke that rule of equity which leaves the parties to an unlawful agreement in exactly the position in which it finds them, without tendering aid to either or any of them. In support of the assertion that this is an action to enforce contracts in restraint of trade, appellants cite section 1673 of the Civil Code, and, among other authorities, *Santa Clara Valley Milling & Lumber Co.* v. *Hayes et al.,* 76 Cal. 387, [9 Am. St. Rep. 211, 18 Pac. 391]; *Pacific Factor Co.* v. *Adler,* 90 Cal. 110, [25 Am. St. Rep. 102, 27 Pac. 36]; *Vulcan Powder Co.* v. *Hercules Powder Co.,* 96 Cal. 510, [31 Am. St. Rep. 242, 31 Pac. 581]; *Getz Bros. & Co.* v. *Federal Salt Co.,* 147 Cal. 115, [109 Am. St. Rep. 114, 81 Pac. 416]. All of these cases arose upon efforts to enforce contracts in restraint of trade by and against parties *in pari delicto,* and in each it was made a part of the contract that the property to be delivered was to be used for an unlawful purpose. From the answers in this case the most that can be claimed with reference to the guilty knowledge of the raisin growers that plaintiff was trying to form a monopoly was the published statement that the association was determined to secure contracts for eighty-five per cent of the entire production of raisins for the year. The answer

averred such publication. But granting that those who delivered raisins knew of this design, that fact alone would not prevent them from recovering the full value of their merchandise, or from participating in the distribution of money received from the sale of it. Even granting that the producers knew of the unlawful design in restraint of trade, which, it was alleged, plaintiff was endeavoring to accomplish, that fact would not, of itself, be sufficient to defeat this action. The true rule is clearly stated by Selden, J., in *Tracy* v. *Talmage,* 14 N. Y. 176, [67 Am. Dec. 132] :

"I consider it, therefore, as entirely settled by the authorities to which I have referred, that it is no defense to an action brought to recover the price of goods sold, that the vendor knew that they were bought for an illegal purpose, provided it is not made a part of the contract that they shall be used for that purpose; and, provided, also, that the vendor has done nothing in aid or furtherance of the unlawful design."

This rule was properly qualified in the opinion of Comstock, J., on a motion for re-argument, wherein it was held that the principle did not apply to cases where the offense intended is of such enormity that no man having knowledge of the design can remain neutral without being in a just sense a criminal himself, as in the case of poison or a deadly weapon purchased for the purpose of murder. The special defense failed to allege facts sufficient to bring defendants within the rule denying relief to participants in illegal contracts, and therefore the court did not err in refusing to admit evidence upon this issue.

The complaint contained averments in effect that some defendants had received more of the proceeds from the sale of the raisins than the amount to which they were entitled, and that others had received less than their shares. Appellants take the position that these are statements of conclusions of law and need not be traversed. Plaintiff's reply to this is that these allegations might have been omitted from the complaint without impairing its statement of a good cause of action, but assuming that their omission would have been fatal to the pleading, we cannot agree with appellants that they present mere conclusions of law, founded, as they must have been in part, upon plaintiff's knowledge of the net amount derived from the sale of raisins, the number of persons entitled to the

benefit of such fund, and the quantity and quality of raisins delivered by each. In the case at bar, we may appropriately quote the language of this court in *Lataillade* v. *Orena*, 91 Cal. 578, [25 Am. St. Rep. 219, 27 Pac. 927] :

"It is true that pleadings should state the ultimate facts, and not the probative facts or conclusions of law. But what are ultimate facts and what conclusions of law are often mixed and uncertain questions. (*Levins* v. *Rovegno,* 71 Cal. 273, [12 Pac. 161] ; *Turner* v. *White,* 73 Cal. 299, [14 Pac. 794].) The same averment may be of a fact or of a conclusion of law, according to the context. We think the averments here complained of should be held sufficient as statements of fact."

The trial court failed to rule upon certain reserved objections to offered evidence. This is assigned by appellants as error, and the case of *Raymond* v. *Glover*, 122 Cal. 475, [55 Pac. 398], is cited as authority. The reservations of rulings were all with reference to evidence offered in support of the special defense that the contracts were part of a conspiracy in restraint of trade. Plaintiff's attorneys objected to all of this evidence, but by agreement it was received subject to the court's later ruling. The court plainly intimated that the ruling, if made at that time, would be against the admission of the proffered evidence, saying:

"I certainly do not wish to rule hastily. The questions that strike me very strongly at this time are as to whether you, as a party to the contract, have a right to make that objection at all; and secondly, as to whether the pleadings in the case justify it."

There was no later ruling relative to this matter, but in view of our conclusion that the defense resting upon an alleged conspiracy in restraint of trade was not so pleaded as to be available, this error was immaterial. (Code Civ. Proc., sec. 475.)

We find no other matters in the record requiring particular attention. From the above discussion it follows that the judgment and order from which these appeals are taken must be affirmed.

Henshaw, J., and Lorigan, J., concurred.